Case No. 1:22 CV00287

UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA

STEVEN MILES, JR

Plaintiff.

v.

WASHINTON HOSPITAL CENTER,

Defendant.

Notice to Vacate from the Superior Court
for the District of Columbia
Civil Action No. CA004564B/ 03/11/2022
Hon. Joe M. Lopez

PLAINTIFFS MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MEMORANDUM IN SUPPORT
OF DEFENDANT WASHINGTON HOSPITAL CENTER
CORPORATION' MOTION TO DISMISS

REQUEST FOR JURY DEMAND

Steven Miles, Jr.
306 Bryant Street, NE
Washington, DC. 20010
Phone:  202-257-9686
Steven.l.milesjr@gmail.com

*Pro Se*



RECEIVED
MAR 29 2022
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# TABLE OF CONTENTS

PAGE(S)

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.     Plaintiff's Timeline at WHC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.     Opposing Plaintiff's Participation in Protected Activity. . . . . . . . . . . . . . 7

    B.     Materially Adverse Action Taken by the Employer . . . . . . . . . . . . . . . . . 7

    C.     Requisite Level of Causal Connection Between the Protected
             Activity and the Materially Adverse Action . . . . . . . . . . . . . . . . . . . . . . . . 8

**RETALIATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

**CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**ADMINISTRATIVE REGULATIONS**

HRP 611 F. Disciplinary Action (in part) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

HRP 611 *F. Disciplinary Action (in part )*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

**AUTHRORTIES**

Title VII of the Civil Rights Act of 1964 Title VII (42 U.S.C. 2000e et seq.). . . . . . . . . 6

*Robinson v. Shell Oil Co.*, 519 U.S 337 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

**LIST OF PARTIES AND COUNSEL**

| | |
|---|---|
| Plaintiff | Steven Miles<br>***Pro Se*** |
| Defendant<br>Defendant Attorney(s) | Washington Hospital Center<br>Emmett F. McGee, Jr. (456498)<br>Clifford B. Glover, III (888229930)<br>**Jackson Lewis P.C.** |

# TABLE OF CONTENTS

PAGE(S)

**INTRODUCTION** .................................................................. 2

**BACKGROUND** ................................................................... 3

    A.    Plaintiff's Timeline at WHC. ................................................ 4

**ARGUMENT** ....................................................................... 6

    A.    Opposing Plaintiff's Participation in Protected Activity. .................. 7

    B.    Materially Adverse Action Taken by the Employer ....................... 7

    C.    Requisite Level of Causal Connection Between the Protected Activity and the Materially Adverse Action .................................. 8

**RETALIATION** ..................................................................... 9

**CONCLUSION.** .................................................................... 12

**ADMINISTRATIVE REGULATIONS**

HRP 611 F. Disciplinary Action (in part) ........................................... 8

HRP 611 *F. Disciplinary Action (in part )*. ....................................... 13

**AUTHRORTIES**

Title VII of the Civil Rights Act of 1964 Title VII (42 U.S.C. 2000e et seq.). ........... 6

*Robinson v. Shell Oil Co.*, 519 U.S 337 (1997) ..................................... 10

**LIST OF PARTIES AND COUNSEL**

| | |
|---|---|
| Plaintiff | Steven Miles<br>***Pro Se*** |
| Defendant<br>Defendant Attorney(s) | Washington Hospital Center<br>Emmett F. McGee, Jr. (456498)<br>Clifford B. Glover, III (888229930)<br>**Jackson Lewis P.C.** |

**UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STEVEN MILES )<br>)<br>   Plaintiff. )<br>)<br>v. )<br>)<br>WASHINGTON HOSPITAL CENTER. )<br>CORPORATION )<br>)<br>)<br>   Defendants. )<br>)<br>)<br>) | Case No. 1:22 CV00287<br><br>Notice of Removal from the<br>Superior Court of the District<br>of Columbia<br>Case No. CA004564B<br>Hon. Joe M. Lopez<br>Initial Remote Hearing 03/11/2022<br><br><br>REQUEST FOR JURY DEMAND |

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANT WASHINGTON HOSPITAL CENTER CORPORATION' MOTION TO DISMISS

Plaintiff, Steven Miles, moves forward pursuant to the *District of Columbia Civil Rule 12-1(e) to* dismiss the Defendant's Memorandum In Support of Defendant Washington Hospital Center Corporation' Motion to Dismiss. The Defendant's Motion to Dismiss fails to provide accurate evidence of its defense that Plaintiff's *EEOC Charge No. 570-2021-01627* was not filed timely (*Exhibit 4*); and that, Plaintiff did not engage in protected activity in which a claim can be sought under Title VII. On the contrary, Plaintiff argues that Defendant engaged in malicious retaliatory behavior and further engaged in unlawful business practice. Plaintiff's pursuit under Title VII of the Civil Rights Act of 1964 is validated by Plaintiff's participation in proceedings which

critiques Defendant's unfair business practice and the causal adverse actions, hereof, is a matter of law.

## I. INTRODUCTION

Steven Miles, Plaintiff, is bringing suit against Washington Hospital Center, which is a private hospital located within the District of Columbia. It is a member of MedStar Health and operates adjacent to Children's National Medical Center and the National Rehabilitation Hospital. Washington Hospital Center, MedStar Washington Center, and/or Washington Hospital Center Corporation will be known, collectively, hereinafter as WHC and/or Defendants. The address of harm is one of MedStar' Health locations, 110 Irving Street, N.W, Washington, DC 20010. On **medstarhealth.org** MedStar Washington Hospital Center is the chosen name and MedStar Washington is its nickname.

The Employee of WHC, Robyn Sandrick, represents Defendant's Surgical and Ambulatory Sterile Processing Department. She is the Director of the Department and the former supervisor of Plaintiff, Steven Miles. Robyn Sandrick will mutually be known hereinafter as Defendant. Plaintiff alleges in his Complaint and in his *EEOC Charge of Discrimination, 570-2021-01627 (Exhibit 1)* that Defendant willfully violated Title VII of the Civil Rights Act of 1964 by discriminating against Plaintiff due to Plaintiff's continued opposition of Defendant's unlawful employment practices; whereas, such resistance, resulted in adverse actions such as an unwarranted Fit for Duty Drug Evaluation, termination of employment and an attempt to deny unemployment wages.

Amongst the multiple adverse actions, Defendant, additionally, caused a hostile workplace by promoting the use of drugs with those she supervises and used such

2

promotion and/or participation therein against Plaintiff as a harbored narrative for misconduct, insubordination and/or a form of entrapment. Defendant habitually abused supervisory powers by purchasing and utilizing marijuana edibles while at work. Defendant is known to engage in marijuana use with those in her Department such as Plaintiff and her stepdaughter.

## II.   BACKGROUND

Plaintiff received a bank deposit and/or paycheck that reflected eight hours of wages. Plaintiff worked a total of eighty (80) hours. Plaintiff immediately went to Defendant to state he was not fully compensated. The Defendant was aware of the missed seventy-two (72) hours for Defendant is responsible for approving/signing timesheets. The Defendant can also view when the Plaintiff came him by a scanned card that is utilized to move about the building as well as to clock in and out of the building. While Defendant was aware Plaintiff worked eighty (80) hours. Defendant signed a timesheet that reflected eight (8) hours and this error caused Plaintiff a bundle of negative events including termination.

Plaintiff would often ask Defendant about the missed weeks of pay and the Defendant would simply ignore Plaintiff's request as if there was no issue. More than nine days would pass, and Plaintiff could no longer find Defendant so that the timesheet could be signed. In many instances, Plaintiff showed up to work early and Plaintiff stayed at work late in order to get his paycheck signed by the Defendant, who continued to be unreachable.   This hunt lasted for more than three weeks.

Plaintiff was brought to light by Defendant's Assistant Supervisor to go to WHC' Human Relations Department to receive resolve to the lasting issue. WHC' Human

3

Relations revealed to Plaintiff he was accused of stealing time and that such accusation caused for an investigation. The Plaintiff then learned his wages were on hold and he needed to provide proof of his time worked to the Human Relations Department. After verification of his hours worked WHC' Human Relations Department informed Plaintiff that Defendant would need to sign his timesheet in order to expedite an eventual payment for hours applicable. However, Defendant did not readily sign the necessary documents; but, continued to stay invisible. Plaintiff decided to file a grievance against Defendant with the President of the Union.

Hence, that Monday, Defendant made an appearance in her Department and demanded Plaintiff walk with her to the Human Relations Department. The Plaintiff stated, "Why are we going there?" Defendant stated, "Because, I don't want to pay you." This statement was made even though Plaintiff proved to Defendant his hours due were officiated. Once Plaintiff and Defendant were in WHC' Human Relations Office, an employee of WHC stated Plaintiff needs to take a Fit for Duty Evaluation. The employee stated you don't seem "high," but I have to follow your supervisor's instructions. The Plaintiff took the test and the test disclosed that Plaintiff results were positive of drug use. The Plaintiff was then instructed to follow the company procedures for disciplinary actions for coming up positive for drug use.

### A.   PLAINTIFF'S TIMELINE AT WHC

09/2016 - 09/2019   Hired at WHC, Full time, Transporter;

September, 2019   Promoted, WHC, Full time, Perioperative Service Assistant;

October 12, 2020   Complained to RS about continued missing wages;

4

October 14, 2020    Human Relations states RS requested an investigation on Plaintiff accusing Plaintiff of stealing time and; until proven otherwise, Plaintiff pay will be not be on hold;

October 15, 2020    Plaintiff proved he worked hours due; WHC Human Relations approved pending payment and closed the investigation; RS signature was needed to disburse payment

October 16, 2020, Plaintiff was due to receive check; however, RS was not available to sign off on check.

October 16, 2020, Plaintiff saw the President and ask to file a grievance against supervisor, RS, for intentionally holding up his wages, President said OK and no signature was needed;

October 16, 2020 Plaintiff smoked marijuana with Robyn Scandrick's daughter who also works in the same department, so Robyn knew drugs was in Plaintiff's system.

October 19, 2020, RS stated she and Plaintiff need to walk to Human Relations to talk about your money, because "I don't want to pay you."

October 19, 2020, Plaintiff was asked to complete a Fit for Duty;

October 19, 2020 Plaintiff took test and failed

Nov-Dec, 2020 Plaintiff took the required Drug Abuse Class;

December 1, 2020 Plaintiff took drug test and passed drug test and was told to wait for call for the next step to return to work and that after completing is return to work obligations, Plaintiff may be subject to random testing.

December, 2020 Plaintiff applied for unemployment;

January 1, 2021, Plaintiff was terminated.

January 28, 2021, DOES Claims examiner denied Plaintiff's unemployment request;

March 31, 2021, Plaintiff filed a dispute with the Office of Administrative Hearings regarding Defendant's refusal to pay unemployment;

May 28, 2021, Office of Administrative Hearing, Attendees: Steven Miles (Plaintiff), Felipe Quezada, (WHC, Vice President, Renaissance Unemployment insurance Consultants, Inc.)

Witnesses: for WHC: Robyn Sandrick, Anaya S White;

Witnesses for Plaintiff: Bobby Poston, Veshawaa Spencer

May 28, 2021 Office of Administrative Hearing concluded: "Before unemployment may be denied in misconduct cases there must be a finding of misconduct "based fundamentally on the reasons specified by the employer for the discharge." Plaintiff received backpay and was paid to exhaustion, except for eight weeks where defendant proved there was simple misconduct of drug use.

### III.   ARGUMENT

Defendant knowingly and intentionally violated Title VII of the Civil Rights Act of 1964 Title VII (42 U.S.C. 2000e et seq.)  states:

> "It is illegal to discriminate against someone on the basis of race, color, religion, national origin, or sex.  The law also makes it illegal to retaliate against a person because the person complained about discrimination, filed a charge of discrimination, or participated in an employment discrimination investigation or lawsuit. The law also requires that employers reasonably accommodate applicants and employees sincerely held religious practices, unless doing so would impose an undue hardship or the operation of the employers' business."

6

The defendant violated Title VII by:

### A. Opposing Plaintiff's Participation in Protected Activity.

Plaintiff participated in filing a complaint to the Union President of WHC that he opposes the unlawful conduct of his supervisor. Plaintiff stated to the Union Present that because of an error Defendant made with his wages instead of correcting the matter, the Defendant began avoiding Plaintiff altogether. Plaintiff also disclosed to the Union President that Defendant was using, buying and participating in drug use with him, her stepdaughter and other employees in the hospital. Plaintiff further stated to the Union Representative he continually complained to Defendant about wages not being paid and instead of correcting the matter or signing the timesheet, Defendant proceeded with a series of adverse actions to avoid appropriately signing Plaintiff's paycheck.

### B. Materially Adverse Action Taken by the Employer.

Defendant, unknowingly, to Plaintiff, requested WHC Human Relations Department to begin an investigation for Plaintiff stealing time. Plaintiff found this out when in a habitual complaint process about his unpaid wages. Defendant's Human Relations Department disclosed that Plaintiff's wages are on hold due to pending investigation and that Plaintiff would have to prove that hours in dispute are official. This investigation was appealed by Defendant. Plaintiff proved hours sought after were genuine and WHC's Human Relations Department closed the investigation. Defendant's investigation was improper since Defendant was the ultimate cause of the missing hours altogether. Therefore, Defendant's request for an investigation was done so in a malicious manner.

Hence, in the balance of the constructed investigation, Defendant refused to sign Plaintiff's timesheet and decided to continue in adverse mannerism by redirecting Plaintiff back to WHC's Human Relations Department - after refusing to sign Plaintiff's timesheet. Defendant demanded Plaintiff accompany her to WHC' Human Relations Department stating, "I don't want to pay you." When Plaintiff arrived at WHC' Human Relations Department, Plaintiff was told he has to take a Fit to Duty Drug test. The WHC' Human Relations employee informed Plaintiff he does not look "high" but she has to follow procedures and/or request of Defendant.

### C.     Requisite Level of Causal Connection Between the Protected Activity and the Materially Adverse Action

Plaintiff took the Fit to Duty Drug Evaluation testing positive for drug use. Plaintiff agreed, in writing, "to participate in random testing program as a condition of continued employment." In addition, Plaintiff was cleared by the Occupational Health Department after producing a negative result for drug use. (*Exhibit 2*) However, even though Plaintiff followed Defendant's procedures to return to work, Plaintiff was terminated by Defendant. Plaintiff was a Current Associate.

WHC HRP 611 states:

> "Associates in their Introductory Period who are determined to be unfit for duty will be separated from employment at the time of the first incident."

A Current Associate is not subject to termination as a chosen form of disciplinary action.

## IV.   RETALIATION

1. Defendant paid Plaintiff for eight hours, knowing seventy-two hours were missing and did not correct the issue.

2. Plaintiff complained to Defendant about unpaid wages and the Defendant began avoiding Plaintiff, causing a hostile work environment.

3. Defendant's decision to continually evade Plaintiff and ignore his request for compensation is a form of harassment.

4. On October 16, 2020, Plaintiff participated in proceedings to investigate Defendant regarding the hostile work environment, non-paid wages; and about, Defendant's involvement in the promotion of the sale and use of drugs in the workplace.

5. On October 19, 2020, Plaintiff was summoned to take a Fit to Duty Evaluation due to "Reasonable Suspicion as a cause. Plaintiff's test disclosed a positive result in the use of marijuana. Defendant's request for a Fit to Duty was a form of retaliative punishment for his opposition of her ongoing unlawful employment practice(s).

6. Defendant knew Plaintiff's result because Plaintiff and Defendant's stepdaughter recently engaged in marijuana edibles at or near October 16, 2020. Further, Defendant is aware of Plaintiff's drug use for Defendant smoked marijuana with Plaintiff on more than one occasion. Further, Defendant engages in the use of edibles, which they collective purchase at the workplace.

7. On November 27, 2020, Plaintiff took another drug test which reflected negative as a result. Plaintiff' negative results warrant a Return to Work.

Defendant did not allow Plaintiff, despite his negative result to return to work. Plaintiff waited to return to work in November and in December; then, on January 1, 2021, Plaintiff was terminated.

8. Plaintiff, once again, contacted his Union Representative; however, they did not follow up on the investigation and Plaintiff remained unrepresented by his Union. The Union Representative sent an email to Defendant on Friday, October 16, 2020 and on Monday, October 19, 2020, Plaintiff was suspended from his place of employment.

9. Lastly, Plaintiff filed for unemployment wages, Defendant interfered in Plaintiff's unemployment wage pursuit and Plaintiff was forced to request a hearing from The Department of Employment Services. The hearing demonstrated Defendant was acting with malicious and retaliative intent. Defendant remain in habitual state of interrupting Plaintiff's compensation. Defendant did not sign Defendants timesheet until sometime in November and now Defendant did not want Plaintiff to receive unemployment wages. However, Plaintiff did receive backpay of his unemployment wages until exhaustion. See *Robinson v. Shell Oil Co.*, 519 U.S 337 (1997) (where Federal law prohibits employers nationwide from taking adverse action in retaliation against form employees).

Defendant's use of marijuana and/or edibles could be the likely reason Defendant was clouded by her very own errors. According to *medicalnewstoday.com* research indicates that memory and cognition loss is a few of the adverse impacts of regular cannabis use. As a substitute of legality and perhaps reality, Defendant created an unlawful turn of events. Defendant was annoyed Plaintiff wanted to be

compensated and even cause question to Plaintiff's character by labeling Plaintiff as an employee who steals time causing a groundless investigation of such. Defendant never expressed to Plaintiff she believed he was stealing time for that would not be logical for Defendant has the burden of the error.

Defendant's actions did not stop at the workplace, Defendant carried out unlawful employment practice under Title VII at The Department of Labor by attempting to over exaggerate Plaintiff's drug use in order to heighten Defendant's reasons for terminating Plaintiff so that Plaintiff would not be eligible. The Hearing took place on May 18, 2020. Defendant claimed in the Hearing that Plaintiff had alcohol and drugs in his system so that his conduct would be considered "Gross" so that wages would be denied. Defendant did not perform a blood test upon Plaintiff for an alcohol test.

Defendant claims she was prompted by other employees that Plaintiff was unfit for duty; yet, Defendant could not name the employees. Because, that tale did not work, Defendant stated she observed the Plaintiff and that he was "unsteady on his feet, did not speak normally, was generally moving more slowly than he usually did and had extremely red eyes." While Defendant, once again, was defaming Plaintiff's character, she was not describing characteristics of a person who engages in edibles. According to WebMD and five other websites the use of edibles may cause Dizziness, Nausea, Dry Mouth, Fast Heartbeat, etc. However, not one description matched Defendants.

Plaintiff' Hearing statement states (in part):

> "Claimant was unsteady on his feet, did not speak normally, was generally moving more slowly than he usually did, and had extremely red eyes. In contrast, Mr. Poston, Ms. Spencer, and Mr. Stokes all saw

> Claimant that same day before Ms. Sandrick and did not perceive the same things. And I believe they all were truthful about what they perceived."

The Judge concludes:

> "Though drug use can be 'serious indeed," the circumstances of Claimants use were not sufficiently serious or repeated to rise to the level of gross misconduct. No evidence showed the frequency with which Claimant had engaged in this behavior, although the level in his system was consistent with frequent use. And Employees own Employer's Drug Free Workplace rules indicate that, sometimes an employee's drug use is not serious enough to result in termination of employment. And Employer did not terminate Claimant immediately, although it did not have Claimant work again after his initial positive test. A serious offense would more likely have resulted in an earlier termination."

## V. CONCLUSION

A view of Plaintiff's Department of Employment Service Hearing, *(Exhibit 3)*, will prove Defendant's attempt to state her reasons for a Fit for Duty Evaluation were not valid but void. Defendant stated to Plaintiff, "I don't want to pay you," and Defendant took immediate measures so that wages would not be paid by taking Plaintiff to WHC Human Relations for a drug evaluation where she was certain of the results, not from the descriptions above but because she knew first hand of his usage. Defendant was also aware that Plaintiff would have to go on suspension following the evaluation. Defendant did not pay Plaintiff for wages requested until mid-November of 2020. Plaintiff's suspension was on October 19, 2020.

EEOC enforces SEC. 2000e-2. *[Section 703]*

(a) Employer practices

It shall be an unlawful employment practice for an employer -

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

12

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

It is more than apparent that Defendant violated Title VII of the Civil Rights Act of 1964; because Plaintiff filed a grievance against his Supervisor for not signing his timesheet and/or paycheck. Plaintiff's complaint to his Union Representative made him a causal subject to retaliation discrimination resulting in a constructed Fit for Duty Drug test, followed by a delayed suspension then termination. This disciplinary action is opposite of Defendant's HRP 611:

> "…the associate will be required to be medically cleared by the Occupational Health depart which includes completion of drug/alcohol testing as requested prior to return to work. Failure or refusal to test will result in the associate not being medically cleared and subject to disciplinary action."

Defendant did not follow WHC procedures for their Return to Work Evaluation; while Plaintiff fully cooperated with procedures by signing an agreement to take the Fit for Duty Test, by taking the drug test, by coming forthright that he had taken two edibles, and by retaking the drug test baring a negative result. Defendants Return to Work procedure under HRP 611 clearly bounds a "Return to Work stating (in part):

> 2. Violation of any WHC/department work rule including refusals to submit to drug/alcohol testing, or altering/attempting to alter a specimen, or possession or use of illegal drugs on hospital premises can result in disciplinary action up to and including termination.
>
> 3. Associates in their Introductory Period who and determined to be unfit for duty will be separated from employment at the time of the first incident."

13

Defendant's varied false statements about reasoning for requesting a Fit for Duty Evaluation altogether were unfounded.  Hence, because Defendant was aware of Plaintiff's drug use, Defendant utilized her supervisory control to retaliate against Plaintiff for his quest to be compensated.  Defendant did not subject other employees in her department to be evaluated for duty, who she had knowledge of participation in the use of marijuana and marijuana edibles.  This participation would also include Defendant who had a responsibility as a Director to deter the use and the promotion of drugs in the workplace.

Defendant's error (on Plaintiff's timesheet) subjected Plaintiff to a hostile work environment, a delay in compensation, and a baseless investigation of stealing company time.  Plaintiff reputation was blackened and as such the Union Representative did not represent Plaintiff any further.  Defendant's repeated, unlawful retaliation at the workplace, accompanied with strategic adverse actions is a violation of unlawful employment practice, which violates Title VII of the Civil Rights Act of 1964, as amended.   Plaintiff's complaint for damages is not without merit and Plaintiff is seeking all damages recoverable and/or applicable under Title VII adding up to and possibly beyond two million dollars.

Respectfully Submitted,

*[signature]*

Steven Miles
306 Bryant Street, NE
Washington, DC.  20010
(202) 257-9686
steven.l.milesjr@gmail.com
**Pro Se/Appellant**

UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN MILES )<br>)<br>Plaintiff. )<br>) Case No. 1:22 CV00287<br>v. )<br>) Notice of Removal from the<br>WASHINGTON HOSPITAL CENTER. ) Superior Court of the District<br>CORPORATION ) of Columbia<br>) Case No. CA004564B<br>) Hon. Joe M. Lopez<br>Defendants. ) Initial Remote Hearing 03/11/2022<br>)<br>)<br>) REQUEST FOR JURY DEMAND | |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of March 2022, BY HAND, I delivered Plaintiff's Opposition to Defendant's Memorandum in Support of Defendant Washington Hospital Center Corporation' Motion to Dismiss in the above-captioned case upon listed counsel below and registered, accordingly at the United States District Court for the District of Columbia, and served a copy to Defendant by USPS.

Emmett F. McGee, Jr. (456498)
Jackson Lewis P.C.
2800 Quarry Lake Drive, Suite 200
Baltimore, MD 21209
Emmett.mcgee@jacksonlewis.com
Clifford B. Glover, III (888229930)
2800 Quarry Lake Drive, Suite 200
Baltimore, MD 21209
Clifford.glover@jacksonlewis.com
410-415-2000
410-415-2001(facsimile
***Attorneys for Defendant***
***Washington Hosp. Center Corp.***

15

Respectfully Submitted,

*[signature]*

Steven Miles
306 Bryant Street, NE
Washington, DC.  20010
(202) 257-9686
steven.l.milesjr@gmail.com

**Pro Se**

16